```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES OF AMERICA,                :    S2 16cr559(DLC)
                                         :
            -v-                          :    MEMORANDUM OPINION
                                         :         AND ORDER
COREY BROWN,                             :
                                         :
                      Defendant.         :
---------------------------------------- X
```

APPEARANCES:

For the Government:
Brooke Cucinella
Jordan Estes
Margaret Graham
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007

For the Defendant:
Andrew G. Patel
Benjamin Silverman
Patel & Shellow LLP
80 Broad Street, Suite 1900
New York, NY 10004

Jean Barrett
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042

DENISE COTE, District Judge:

On June 21, 2017, defendant Corey Brown ("Brown") was convicted following a jury trial on five counts, including several counts related to the murder of Vincent Davis ("Davis"). Brown brings a motion for a judgment of acquittal pursuant to

Rule 29(c), Fed. R. Crim. P., with respect to one of those five counts: the count that charged him with causing the use of a firearm during and in relation to the murder of Davis, or aiding and abetting that crime, in violation of 18 U.S.C. §§ 924(j)(1) (the "Firearms Offense").[1]  The motion is denied.

**BACKGROUND**

The trial evidence, taken in the light most favorable to the Government, established the following.  Brown and Davis were high-ranking, rival members of a set of the Bloods gang that called itself Sex Money Murder ("SMM").  In the summer of 2011, Davis slashed Brown's face with a razor.  At roughly 2:20 a.m. on July 15, 2012, Christopher Lopez ("Lopez") -- a young man whom Brown had recruited into SMM and groomed -- shot Davis multiple times at close range as Davis left a cookout.  Davis died shortly thereafter from his gunshot wounds.  After the shooting, Brown advanced Lopez within the gang.

Lopez, who was the Government's central witness at trial,

---

[1] The other four counts of conviction are for (1) conspiring to violate the Racketeer Influenced Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d); (2) murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(1); (3) conspiracy to commit murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5); and (4) possession of firearms as a felon, in violation of 18 U.S.C. § 922(g)(1).

2

testified that Brown had told him that Davis had slashed him and that he wanted Davis killed.  From their conversation, Lopez understood that Brown was ordering that Davis be killed and wanted Lopez to do it.  On the night of the shooting, Lopez learned that Davis was at a cookout.  Having learned that he had a good opportunity to kill Davis, Lopez spoke briefly on the telephone with Brown, told Brown that he had just seen Davis at a cookout, and asked if Brown still wanted him "to take care of that."  Brown authorized Lopez to go ahead and kill Davis.  Lopez retrieved a gun, went to the street outside the cookout, and shot Davis as he emerged.

Lopez's testimony was confirmed by his prior descriptions of the murder.  Long before he began to cooperate with the Government, Lopez had told two others, who also testified at trial, that Brown had ordered him to kill Davis.[2]  In 2014, Lopez told Jimmy Abreu -- a confidential informant Lopez met in prison -- that the main reason Brown wanted Davis killed was because Davis had cut Brown's face.  In addition, Lopez told his girlfriend Randi Bozeman that Brown had ordered him to kill Davis because Davis had cut Brown's face.  In his first proffer

---

[2] Abreu was called as a defense witness.  Abreu recorded some of his prison conversations with Lopez, but those recordings were not played at trial.

session with the Government, Lopez also told federal authorities that Brown had ordered him to murder Davis.

The only issue raised in Brown's Rule 29(c) motion is whether Brown knew that Lopez would use a gun to kill Davis. The issue of Brown's advance knowledge was addressed by the Government in its main summation. The Government argued:

> You know that [Brown] ordered Lopez to kill Davis and you know that Brown knew that Lopez would use a gun to do it. Everything that you know about Sex, Money tells you that this is true. When they kill, they do it with guns. Their salute: Two guns up. Their handshake: Hitting guns with each other. Their nickname: Blazing Billies, referencing their frequent firing of guns. Their rap video, if you listen to the song "In New York" where they stated, "If there is beef, we send a shot. Make sure that body drop." Brown knew how Sex Money members killed, with guns, and he knew that is how Lopez would kill Davis.

In the defense summation, Brown's counsel principally attacked Lopez's credibility. For example, she accused Lopez of lying about his motive to kill Davis. She argued that Lopez shot Davis "for his own purposes", namely, to gain status and respect within the gang. As for Lopez's prior consistent statements that Brown had ordered the murder, she argued that Lopez had lied in order to insulate himself from retaliation by the gang.

**DISCUSSION**

Rule 29 permits a defendant to move for a judgment of acquittal on the basis of insufficiency of the evidence. Fed. R. Crim. P. 29(c). A judgment of acquittal should only be entered if the court concludes that "no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Serrano, 856 F.3d 210, 211 n.2 (2d Cir. 2017) (citation omitted); see also United States v. Valle, 807 F.3d 508, 529 (2d Cir. 2015) ("[A] court can enter a judgment of acquittal only if the evidence of guilt is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." (citation omitted)). A defendant who challenges the sufficiency of the evidence to support his conviction bears a "very heavy burden." United States v. Abu-Jihaad, 630 F.3d 102, 135 (2d Cir. 2010) (citation omitted). In deciding such a motion, the court must "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." United States v. Babilonia, 854 F.3d 163, 174 (2d Cir. 2017) (citation omitted). The evidence is considered "in its totality, not in isolation, and the government need not

5

negate every theory of innocence." United States v. Lee, 549 F.3d 84, 92 (2d Cir. 2008) (citation omitted).  Under Rule 29, a district court must affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Khalil, 857 F.3d 137, 139 (2d Cir. 2017) (citation omitted).

The defendant's motion is addressed to his conviction under 18 U.S.C. § 924(j), which provides in relevant part: "A person who, in the course of a violation of [§ 924(c)], causes the death of a person through the use of a firearm shall . . . if the killing is a murder . . . be punished by death or by imprisonment for any term of years or for life."  Brown was charged as both a principal and as an aider and abettor of this crime.  Brown does not dispute that the jury was properly charged regarding the elements of the offense.

The jury was charged, in relevant part, that an essential element of the Firearms Offense required the Government to prove that "Brown caused the death of Vincent Davis . . . through the knowing use of a firearm."  With respect to aiding and abetting liability, the jury was instructed in relevant part as follows:

> The Government must prove beyond a reasonable doubt both that Brown acted with advance knowledge that a firearm would be used by another, and that Brown intended that the presence of the firearm would be in furtherance of the murder . . . .

6

See Rosemond v. United States, 134 S. Ct. 1240, 1249 (2014) (requiring "advance knowledge" of his "confederate's design to carry a gun"); United States v. Prado, 815 F.3d 93, 102 (2d Cir. 2016) (requiring a finding of a defendant's "advance knowledge of the firearm"). It is well established that "[a] jury's verdict may be based entirely on circumstantial evidence." United States v. Rutigliano, 790 F.3d 389, 402 (2d Cir. 2015) (citation omitted).

There exists ample circumstantial evidence from which a reasonable jury could -- and this jury did -- find proof beyond a reasonable doubt that Brown had advance knowledge that Lopez would use a firearm to murder Davis. To begin with, the obvious method of choice to kill someone in the middle of night at a party is a weapon. And the weapon of choice for SMM was a gun. The history, culture, hierarchy, disciplinary code, symbols, signals, and greetings of SMM centered on the glorification of guns. SMM's founder, Peter Rollack was known as "Pistol Pete" and as someone who would "shoot first and ask questions later." SMM's call -- "two guns up" -- was expected to elicit the response -- "triple homicide". Instead of a handshake, members greeted each other by forming their hands into the shape of a gun and touching those "guns" together. SMM's nickname --

"Blazing Billies" -- conveyed the following: "Blazing, that means when you shoot, you shoot. And then billy, billies is bad, so Blazing Billies." When individuals join SMM, the initiation oath includes the promise to "ride with my two guns stacked high." One of the gang's rap videos had the lyric: "If there is beef, we send a shot, make sure that, that body drop." One rap video proclaimed Brown, who was known within SMM as "CB", as a source for guns. Its lyrics included "hit CB, yo I need the four-fifth", meaning call Corey Brown for a .45 caliber handgun. Brown's entire back is covered by a tattoo with the words Sex, Money, & Murder above the image of two guns and the words Blazing Billy. Brown told his former probation officer, who testified at trial, that if SMM had been responsible for a shooting in the Soundview neighborhood of the Bronx, a neighborhood in which SMM operated, then "it would have been multiple shots as opposed to one shot at the person," and that the wall in the area "would have been riddled with bullets instead of one shot." Moreover, Lopez and Brown helped each other to purchase guns. In sum, this and other trial testimony and exhibits provided overwhelming circumstantial evidence for the jury to consider and from which it could conclude beyond a reasonable doubt that when Brown ordered Lopez to go ahead and proceed to kill Davis at a cookout that he understood, expected

8

and agreed that the murder would be committed with a gun as opposed to some other weapon.

Brown's counsel argues that there was also evidence at trial that SMM members committed stabbings as well as shootings. There was no evidence, however, that SMM members who were "on the street," as opposed to in prison, tried to or did kill another person with a knife or any weapon other than a gun.

## **CONCLUSION**

Brown's July 19, 2017 motion for a judgment of acquittal pursuant to Rule 29(c) is denied.

Dated:  New York, New York
        September 13, 2017

```
                              _____
                                      DENISE COTE
                              United States District Judge
```